HOOD, Judge.
This is an expropriation suit instituted under LSA-R.S. 48:441, et seq., by the State of Louisiana, through the Department of Highways, against Harry H. Turpin. It affects property in Natchitoches Parish.
The present suit was consolidated for trial with two other cases relating to property in the same area, and we are deciding all three of these companion suits on this date. See State of Louisiana, Through Department of Highways v. County Club Acres, Inc., La.App., 348 So.2d 138, and State of Louisiana, Through Department of Highways v. Natchitoches Country Club, La. App., 348 So.2d 141.
In the instant suit the Department of Highways has taken 8.217 acres in full ownership, and 0.138 acres for a drainage servitude, out of a 15.146 acre parent tract *136 owned by defendant. Plaintiff deposited $3,883.00 in the Registry of the Court as its estimate of the value of the property taken. Defendant filed an answer alleging that he is entitled to an award of more than that amount for the value of the property taken and for severance damages.
The trial judge concluded that the value of the entire parent tract before the taking, including improvements, was $7,473.00. He rendered judgment awarding defendant the total sum of $6,343.50, less the amount deposited, being an award of $3,987.00 for the property taken, $210.00 for the fences taken, and $2,146.50 for severance damages. The Highway Department appealed. On this appeal plaintiff does not question the amount of the award made for the value of the property or improvements taken, or for severance damages to one very small tract of remaining land. It seeks, however, to have the award for severance damages to two other tracts of remaining property eliminated or reduced.
The parent tract owned by defendant before the taking, comprising 15.146 acres, was a rectangular shaped tract of land located about three-fourths of a mile west of the corporate limits of the City of Natchi-toches, and about one-fourth of a mile north of Louisiana Highway No. 1. Prior to the taking the parent tract was wooded property, most of which was covered with heavy underbrush. There were no improvements on it except for a few scattered fences. No utilities were available to that parent tract. The property had never been used for any purpose other than as woodsland and for pasturing cattle. The center of the tract was low, due to the fact that a natural drain ran across it from the northwest to the southeast parts of the property.
Before the taking the parent tract was totally landlocked, there being no access roads connecting it with Louisiana Highway No. 1 or any other public road. T. J. Stephens, an appraiser who testified in behalf of the defendant landowner, was under the impression that defendant owned a right or servitude which would enable him to build a road to the parent tract, connecting it with some other thoroughfare. H. Loren Willet, an appraiser for the Highway Department, was unable to find evidence of any such right of way, despite a specific search for it. Stephens was indefinite as to the existence of such a right of way, but he said with reference to it that “most of it was low on the highway, but it would have been suited, a road could have been built through it.” In any event, both appraisers valued the present tract at somewhat lower figures because there were no access roads or lanes connecting that property with any other public road.
The property taken in full ownership by plaintiff was an 8.217 acre tract, which comprised a strip of land approximately 350 feet wide running east and west almost through the center of the parent tract. That part of the property taken was to be used by plaintiff for the construction of a concrete by-pass highway, State Route 3110, around the City of Natchitoches. The evidence indicates that the owners of the property on either side of the new highway were to have free access to and from it.
The other property taken by plaintiff was a servitude on and affecting a 0.138 acre tract of land, located near the northwest corner of the parent tract. That servitude was to be used by plaintiff for constructing a drainage ditch or canal providing drainage for the new highway and for property on each side of that highway, in that vicinity-
After the taking, defendant was left with the following remainders of the parent tract: (1) 4.245 acres located on the south side of the new highway, having a frontage of 1,088.28 feet on that highway; (2) 2.481 acres on the north side of the new highway, having a frontage of slightly more than 600 feet on that highway; and (3) a triangular shaped tract of land in the extreme northwest corner of the parent tract containing 0.071 acres and having a frontage of 120 feet on the new highway by a depth of 57.68 feet on one side and 102.20 feet on the remaining side.
Appraiser Willet felt that the highest and best use of the parent tract before the *137 taking was for agricultural purposes, with an ultimate change to suburban acreage after it is provided with better access. Appraiser Stephens submitted a report reciting that the parent tract was best suited for residential purposes. At the trial, however, he testified with reference to its highest and best use that, “on an overall basis, pasture, with some slight areas with a possibility of estate type homesites.”
As already noted, the only issues presented here relate to the award of severance damages to the two larger remaining tracts of land. With reference to severance damages, Willet testified that both of the above remaining tracts had “gained new highway frontage and resultant increase in market value,” and that the unit value of each of those remaining tracts “far exceeds” the before unit value. He concluded that no severance damages were sustained by the landowner.
Stephens testified that the 2.481 acre remaining tract of land, lying north of the new highway, was damaged to the extent of 50% of its original value, or $592.50, as a result of the taking. He explained at the trial that this remaining tract sustained severance damages because “it was cut off completely from the other,” and because of “the configuration of the land that’s left after the taking.” He offered no other explanation and no comparables to support his conclusion that this remaining tract of land, which now fronts on a new highway, had decreased in value by 50% as a result of the taking. With reference to the configuration of this remainder, it is apparent that Stephens was mistaken in assuming that it had a depth of only 20 feet on the west. The evidence, including his own official report of appraisal, shows that the property had a depth of at least 90 feet on the west.
Turning to the 4.245 acre remaining tract located south of the new highway, Stephens expressed the view that it had sustained severance damages of 75% of its original value, amounting to $1,520.00, as a result of the taking. In his report he assigned no reason for arriving at that conclusion, stating only that “there is an additional remaining area of 4.245 acres running the entire length of the property, measuring 983 feet in length, therefore lending damage to the small narrow strip of 75%.”
The construction of the new highway was completed before the trial. Photographs which were introduced in the evidence show that a new, wide concrete highway has been constructed over the property expropriated, with asphalt shoulders several feet wide on each side of the concrete slab. The elevation of defendant’s remaining property is higher than the surface of the highway on both the east and west sides of the remaining tracts, but the elevation of the center portion of a part of defendant’s remaining land is lower than the surface of the highway, due to the natural drain which crosses the property at that point. A new drainage ditch has been constructed crossing the west side of the property, however, which provides drainage for the highway and for the center section of the property. The construction of the highway thus has improved the low areas of the remaining property, making those areas available for other uses by filling them in.
We think the photographs and the testimony of Willet establish beyond question that the remaining property has been greatly enhanced in value by the construction of the new highway. The configuration of both the north and the south remainders is such that there is ample room on both sides of the highway for homesites. The new highway provides excellent access to and from all parts of those remaining tracts, where no access existed before. The evidence simply does not support a holding that defendant’s remaining property has been damaged or has suffered a reduction in value as a result of the taking.
Where the opinion of an expert as to severance damages is based on the percentage method of diminution in value, and is not based on any actual evidence of market value and cannot be justified upon any sound reason which would effect a decrease in market value, such testimony must be considered only as an individual and unsupported expression of opinion. State, Department of Highways v. Christy, 283 So.2d *138 533 (La.App. 1 Cir. 1973); Louisiana Power and Light Company v. Pipes, 188 So.2d 639 (La.App. 2 Cir. 1966).
The opinions as to severance damages expressed by Appraiser Stephens is unsupported by any other evidence, and thus cannot be justified upon any sound reason which could effect a decrease in market value. We thus reject the testimony of Stephens as to severance damages, and conclude that the trial judge erred in accepting his opinions as to that damage.
Our conclusion is that the two larger remaining tracts of land left to the defendant landowner, one of which is the 2.481 acre tract lying north of the new highway, and the other is the 4.245 acre tract lying south of the highway, did not sustain any decrease in value as a result of the taking, and that the trial judge erred in awarding defendant severance damages.
For the reasons assigned, the judgment of the trial court is amended, by reducing the amount of the award made to defendant Turpin from $6,343.50 to the sum of $4,197.00, with legal interest thereon from April 27, 1971, until paid, less a credit of $3,883.00 paid on April 27, 1971. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellee.
AMENDED AND AFFIRMED.